Filed 6/9/21  In re M.A. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re M.A., A Person Coming Under the Juvenile Court Law. | B308171 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.D.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 20CCJP01992-A |

APPEAL from order of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge. Affirmed.

Katie Curtis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

T.D. (mother) appeals from the court's disposition order declaring her 11-year-old son a dependent of the court under Welfare and Institutions Code[1] section 300, subdivisions (a) and (b). On appeal, mother contends insufficient evidence supports the court's jurisdiction findings that she physically abused her son when she slapped him on the face with an open hand causing the area around his eye to bruise and swell. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2020, the Department of Children and Family Services (Department) received a referral alleging mother struck her then 10-year-old son M.A. on the face causing the area around his left eye to swell and bruise. M.A. reported to a school official that mother slapped him across his face with an open hand after he acted out because she wouldn't allow him to have extra food.

When interviewed by the Department, mother admitted she hit M.A. but claimed it was an accident that she struck his face. M.A. was acting out and becoming aggressive, so mother tried to spank his buttocks. But because he "was moving around so much … she accidentally hit [him] in the face." Mother expressed remorse for hitting M.A. and told the Department she would no longer use physical discipline.

M.A.'s father, Charles A. (father), didn't live with the family and wasn't around when mother struck the child. Father

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

didn't believed mother would purposefully strike her son on the face or otherwise intentionally injure the child.

The day after the Department received the referral, the Department asked mother to have M.A. examined by a doctor, explaining it would aid the Department's investigation into whether she abused her child. Mother refused to take M.A. to a doctor because she didn't have the time and believed it was unnecessary for him to be examined because of an "accidental injury." Mother didn't have M.A. examined by a pediatrician until a little more than a month after the incident. The doctor didn't find any evidence of physical abuse.

In April 2020, the Department filed a petition on M.A.'s behalf, alleging mother's physical abuse placed the child at serious risk of physical harm (§ 300, subds. (a) & (b); a-1 and b-1 allegations). The Department also alleged father failed to protect the child from mother's conduct (a-1 and b-1 allegations).

At the detention hearing, the court found the petition alleged a prima facie case under section 300, subdivisions (a) and (b). The court ordered M.A. to remain in his parents' custody.

After the detention hearing, father moved back into the family's home. Mother told the Department that she has only spanked M.A. " '1 to 3 times his entire life.' " (Italics omitted.) She uses a rewards system where she takes privileges away from the child when he gets in trouble; spanking is only a " 'last resort' " form of punishment. Father and M.A.'s grandmother believed mother would never intentionally hurt the child, and the grandmother confirmed mother uses a rewards system to help control her son's behavior.

When asked about participating in a voluntary family maintenance plan, mother and father stated they didn't believe it

was necessary to have someone in their home watching over the family because of an isolated incident. Mother was willing, however, to receive and participate in services. She told the Department she would rather attend classes at a facility than have a counselor monitor the family inside the home.

In July and August 2020, mother completed two 4-hour online courses focusing on anger management and parenting education. The Department couldn't contact any of the representatives from the courses or confirm that any of the courses were led by a live instructor, however. The Department informed mother that she may need to complete additional courses taught by live instructors in the future. Prior to the jurisdiction and disposition hearing, mother and father declined to participate in a voluntary supervision program under section 301.

In October 2020, the court held the jurisdiction and disposition hearing. The court struck the language concerning father from the a-1 and b-1 allegations and otherwise sustained the allegations as pled. In sustaining the petition, the court found mother's explanation for how M.A. was injured was inconsistent with the nature of the child's injuries. The court also faulted mother for refusing to take M.A. to a doctor when the Department asked her to shortly after it received the abuse referral. The court declared M.A. a dependent of the court, ordered him to remain placed in his parents' custody, and ordered the parents to participate in family maintenance services.

Mother appealed the court's disposition order.

4

In January 2021, the court terminated jurisdiction over M.A. and left him in his parents' custody.[2]

## DISCUSSION

" ' "A judicial tribunal ordinarily may consider and determine only an existing controversy, and not a moot question or abstract proposition. ..." ' [Citation.] An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490.) Generally, "an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot." (See *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) A claim on appeal is not moot, however, " 'if the purported error infects the outcome of subsequent proceedings.' " (*Ibid.*) We therefore must determine on a case-by-case basis whether an order terminating jurisdiction has rendered moot a challenge on appeal to the jurisdiction findings and disposition orders. (*Ibid.*)

Mother initially challenged the court's jurisdiction findings and its disposition order, including the court-ordered case plan. She concedes her challenge to the disposition order is now moot after the court terminated dependency jurisdiction. Mother asks us to still reach the merits of her challenge to the jurisdiction findings, relying on *In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763 (*Drake M.*). Mother's reliance on *Drake M.* is misplaced.

---

[2] While this appeal was pending, we granted mother's request for judicial notice of the January 2021 minute order. We also denied the Department's motion to dismiss mother's appeal as moot following the court's order terminating jurisdiction.

In *Drake M.*, the father appealed only the jurisdiction findings and disposition orders against him that were based on his use of medical marijuana; he didn't challenge the jurisdiction findings based on the mother's history of drug abuse. (*Drake M.*, *supra*, 211 Cal.App.4th at p. 762.) When the father appealed, the dependency case was still pending in the juvenile court. (See *id.* at p. 761–762.) The Court of Appeal reached the merits of the father's claims because a reversal of the jurisdiction findings against him would change his status in the case from an " 'offending' " parent to a " 'non-offending' " parent. (*Id.* at p. 763.) The court explained, "Such a distinction may have far-reaching implications with respect to future dependency proceedings in this case and father's parental rights." (*Ibid.*) In other words, refusing to reach the merits of the father's claims could have had significant repercussions for the father going forward in that same case, such as whether he could continue to retain custody of the children.

In this case, on the other hand, the juvenile court has already terminated dependency jurisdiction and awarded mother custody of M.A. Consequently, even if we were to reverse the court's jurisdiction findings and mother were deemed a "non-offending" parent, that status would not have any practical effect in *this* dependency case since it is no longer pending.

Mother also claims a favorable decision would preclude the Department from discussing the court's findings and her underlying conduct in future dependency proceedings involving her children. We disagree. Nothing would preclude the Department from discussing the substance of the allegations against mother in future dependency proceedings even if we were to reverse the jurisdiction findings based on those allegations. (*In*

6

*re Madison S.* (2017) 15 Cal.App.5th 308, 330 ["the substance of the spanking allegation would almost certainly be available in any future dependency or family court proceeding, regardless of any determination on our part as to whether it formed an independent basis for juvenile court jurisdiction"].) Because mother has not identified any specific adverse consequences that could stem from leaving the jurisdiction findings against her undisturbed, her appeal does not present a justiciable issue.

In any event, substantial evidence supports the court's assertion of jurisdiction in this case. The court sustained two allegations based on mother striking M.A. on the face—one under section 300 subdivision (a) and the other under subdivision (b) of the same statute. A court may exercise dependency jurisdiction over a child under section 300, subdivision (a), if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally ... by the child's parent ... ." A court may also exercise jurisdiction over a child under section 300, subdivision (b)(1), if " '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent ... to adequately supervise or protect the child ... .' " (*In re R.T.* (2017) 3 Cal.5th 622, 624, 629, italics omitted.)

To show the child faces a risk of harm at the time of the jurisdiction hearing, there "must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 136.) In determining whether conduct is likely to recur, courts may consider evidence of the parent's behavior in the past. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.)

We review jurisdiction findings and disposition orders removing a child from his or her parent's custody for substantial evidence. (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.) We will affirm the findings if they are supported by evidence that is reasonable, credible, and of solid value. (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) "We do not evaluate the credibility of witnesses, attempt to resolve conflicts in the evidence or determine the weight of the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is other evidence supporting a contrary finding. [Citations.] The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order. [Citation.]" (*Ibid.*)

Mother doesn't dispute that she struck M.A. on the face. She only disputes whether she did so intentionally and whether the physical injury the child suffered was serious. She also claims there was no evidence that M.A. faced a risk of harm at the time of the jurisdiction hearing.

As for the extent of M.A.'s injury, the school official who reported the family to the Department stated that M.A. had a "swollen left eye and two purple marks under the left eye." Courts have found swelling and bruising to constitute serious physical harm under the dependency statutes. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 439 [ "deep purple bruises" on child's stomach and forearms inflicted by mother's use of a belt constitutes serious physical harm under section 300, subdivision (a)]; *In re David H.* (2008) 165 Cal.App.4th 1626, 1644 [combination of bruises, red marks, welts, and broken skin can constitute serious physical harm].) Indeed, that mother inflicted

8

bruising and swelling on her child's face, a part of his body that is much more vulnerable than his buttocks, arms, or abdomen, makes the injury all the more serious. Mother also refused to take M.A. to the doctor to have his injury examined shortly after the family came to the Department's attention, supporting an inference that she tried to conceal the extent of the child's injury. On this record, it was reasonable for the court to find mother inflicted serious physical harm on M.A.

As to the nonaccidental nature of mother's conduct, whether she intended to hit M.A. on the buttocks and not the face is not the dispositive issue. Mother admitted she intended to hit M.A.'s buttocks. That she hit M.A. on a part of his body where she wasn't aiming doesn't negate the fact that she intentionally struck her child in a manner that inflicted physical harm. In any event, even if it is an important distinction that mother only intended to hit M.A.'s buttocks and not his face, the court found mother's explanation was not credible. That finding is supported by the record. First, mother's refusal to take M.A. to a doctor shortly after the incident supports an inference that she tried to conceal the extent of her conduct. Second, at the time of the incident, M.A. was 10 years old. In other words, M.A. wasn't a very young child or a toddler. It was therefore reasonable for the court to discredit mother's claim that in trying to strike the lower backside of M.A.'s body, she missed and accidentally struck the child's face.

There also was sufficient evidence that M.A. faced a risk of harm at the time of the jurisdiction hearing. Although mother expressed remorse for hitting M.A., claimed she wouldn't hit him again, and participated in parenting and anger management courses, she also tried to minimize her conduct by claiming she

9

accidentally struck M.A. on the face and by refusing to have M.A.'s injury examined by a doctor. A parent's denial of wrongdoing is relevant to determining whether her child faces a risk of harm under section 300. (See *In re Tania S.* (1992) 5 Cal.App.4th 728, 735, fn. 4; see also *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [" '[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.' "].)

In short, substantial evidence supports the court's finding sustaining the a-1 allegation. Because that finding alone is sufficient to maintain dependency jurisdiction over M.A., and because mother concedes her challenge to the court's disposition order is moot, we need not address her challenge to the sufficiency of the evidence to support the court's finding sustaining the b-1 allegation. (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 [a single jurisdiction finding is sufficient to maintain dependency jurisdiction over a child].)

## DISPOSITION

The juvenile court's disposition order and jurisdiction findings are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.

11